ISIDOR WORMSER, APPELLANT, *v.* ISABELLA GARVEY,
RESPONDENT.

*Contract of sale of real estate — Specific performance — right to impose conditions.*

The plaintiff agreed to purchase certain real estate of the defendant, the contract
providing that in case the defendant was unable to give a good title at the time
therein named, or in case an injunction or attachment should issue to prevent
her disposing of the property, the amount paid on the contract should be
refunded and the contract rescinded. At the time named, plaintiff refused to
fulfill the contract unless defendant would sign an affidavit in regard to the
solvency of her grantor ; defendant refused to do so, tendered back the amount
received, and declared the contract at an end.

In an action for specific performance, *held,* that the plaintiff had no right to require
the defendant to sign the affidavit, and that her insisting upon it was equivalent
to objecting to the title, and that defendant was thereby authorized to rescind
the contract.

APPEAL from a judgment in favor of the defendant, entered upon
the trial of this action by the court without a jury.

In the month of September, 1871, one Andrew J. Garvey, the
owner of certain premises in the city of New York, situate on
Madison avenue, between Sixty-seventh and Sixty-eighth streets,
conveyed said premises to his brother, John Garvey, for a nominal
consideration, and John Garvey conveyed them to the defendant,
the wife of Andrew J. Garvey.

The defendant, being desirous of disposing of this property, to
pay claims which were pressing, offered the same for sale, and it
was placed in the hands of Messrs. Kennelly & Fox, real estate
brokers. These brokers negotiated with the plaintiff's agent for
its sale, and the terms of a bargain were finally closed at the house
of Simon Wormser, who was acting as attorney for the plaintiff, on
the evening of December 18, 1871, Mr. John Garvey acting as the
attorney for the defendant.

The defendant at first claimed that there should be a payment
of $10,000 made on the signing of the contract, but the plaintiff's
agent refused to pay that amount to John Garvey, and it was finally
arranged that the payment should be fixed at $500, as the contract
was to be closed so soon. By the terms of the contract the plain-

tiff was to pay $215,000 for the property, and was to be allowed, upon the closing of the title, for all mortgages, taxes or assessments which affected the premises sold ; and the balance of the purchase-money was to be paid in cash at ten o'clock, A. M., of the twenty-sixth of December, at No. 7 East Forty-seventh street, New York city. This agreement further provided that in case any legal proceedings, in the nature of attachments, injunctions or otherwise, should prevent the defendant, from conveying, or should incumber the title to the premises, or in case the title should be in any way defective, or in case the defendant could not give a good and sufficient title, the agreement should be canceled, and the $500 returned.

After the signing of the contract, the counsel for the plaintiff adverted to the provisions of the bankrupt act, and suggested that he would draw up the required affidavits in respect to the solvency of Andrew J. Garvey, and on or about December twenty-second, he sent certain affidavits to the counsel for Mrs. Garvey, the defendant, to be sworn to by her and by John Garvey, to the effect that they were well acquainted with Andrew J. Garvey's affairs, and that they knew him to be solvent. At this time it was well known that the people of the State of New York had commenced an action against William M. Tweed, Andrew J. Garvey and others, to recover $6,000,000, and that in this action an order of arrest, bailable in $1,000,000, had been issued against the defendants, and it was currently reported that Garvey had fled the country to escape the service of these papers. The plaintiff claimed that if he took this title under these circumstances, that at any time within six months from the time of the conveyance from Andrew J. Garvey to his brother, this conveyance could be set aside by an assignee in bankruptcy in case Andrew J. Garvey should be declared insolvent, and thus the plaintiff's title be defeated, and that it was for this reason that he asked for these assurances of the solvency of Andrew J. Garvey. The parties, on the twenty-seventh of December, met at the office of defendant's counsel, and there it was stated by the plaintiff's counsel that they would not take the title without these affidavits, or some written assurance in reference to Andrew J. Garvey's solvency. The defendant refused to give the affidavits required, upon the ground that they were untrue, although John

Garvey stated that his brother was solvent. On the twenty-eighth of December the parties met, with a like result, the defendant pressing to have the title closed, and the plaintiff refusing to take the title, unless evidence, satisfactory to his counsel, was furnished of the solvency of Andrew J. Garvey. The parties met again on the twenty-ninth of December, and the plaintiff, still persisting in his demand for affidavits of Andrew J. Garvey's solvency, besides the assurance of John Garvey, was notified by the defendant's attorneys that unless the contract was closed the next day, it would be canceled. The parties met the next day ; the defendant tendered a good and sufficient deed of the premises, which deed the plaintiff refused to receive, unless accompanied by satisfactory proofs of Andrew J. Garvey's solvency. The plaintiff tendered the purchase-money, demanding the deed and proofs of solvency, but would not pay the money upon the delivery of the deed alone. The defendant, upon the refusal of the plaintiff to take the deed, declared the contract canceled, pursuant to its terms, and subsequently tendered back the $500 paid thereunder. This was on Saturday, the thirtieth of December, and on the fourth day of January following, this action for a specific performance was commenced by the service of the summons and complaint; and the relief asked was that the defendant be ordered and adjudged to furnish satisfactory proof of the solvency of Andrew J. Garvey, and that she execute and deliver a valid conveyance, etc.

*John W. Edmonds, A. J. Dittenhoefer, Runkle & Englehart,* for the appellant.

*Luther R. Marsh* and *Gilbert & Smedley,* for the respondent.

DAVIS, P. J. :

This case was carefully tried by the learned judge at Special Term, and his findings of fact and conclusions of law, as well as the reasons expressed in his able and elaborate opinion, seem to us to be equitable and just.

In suits of this character there can be no fixed and arbitrary rule by which all cases are to be determined. Each case must depend and be disposed of upon its own circumstances. When and under

what circumstances time is or is not of the essence of the contract, are questions which have received so much and such elaborate discussion, that an attempt to shed further light upon them is quite likely to result in an effort "to darken counsel." (*Delavan* v. *Duncan,* 49 N. Y., 485; *Hubbell* v. *Von Schoening,* id., 326; *Finch* v. *Parker,* id., 1; *Duffy* v. *O'Donovan,* 46 id., 223; *Peters* v. *Delaplaine,* 49 id., 362; *Myers* v. *De Mier,* 52 id., 647; *Merchants' Bank* v. *Thomson,* 55 id., 7.)

Within the established rules of equity we think time was not of the essence of the contract between the parties to this action at the time the same was made and delivered. It was however *material,* and especially so to the vendor, who was anxious to realize the consideration for the purpose of meeting pressing debts. The time for performance was fixed for an early day. It was for that reason that so trifling a sum as $500 was accepted as the payment down; and the parties took particular and unusual pains to provide for a rescission of the contract and the return of the $500, "in case the title to the premises is defective, or in case the party of the first part shall be unable to give at the time [mentioned in the contract] a good and sufficient title to the premises;" and, also, to stipulate for the same consequence, "in case any legal proceedings in the nature of an attachment, injunction or otherwise, shall, in any manner, prevent the said party of the first part from conveying or making title to the said property, or shall incumber the title thereof."

The parties thus stipulated in substance for the consequence of an actual condition of things, *in præsenti,* affecting the title of the lands, the fear of which, as a possibility *in futuro,* led the vendee to refuse to perform the contract on his part.

It might well be claimed that if the plaintiff regarded the title as defective by reason of the contingencies which he feared and asserted, and which arose without any fault of defendant, his taking that ground and refusing to perform, except upon the conditions he imposed, would give defendant the right, by the terms of the contract, to rescind and return the money paid.

It appears that the parties met from time to time; that the defendant was ready with her deed, and tendered performance on payment of the consideration; that the plaintiff made it an express

condition of his performance, that the defendant and her agent should each make an affidavit in relation to the solvency of the. defendant's husband and grantor, the extent of his indebtedness, and the amount of his property over and above his debts, which they refused to make, and could not, as they assert, with truth, have made; and finally, that at the last meeting the defendant gave notice that if the deed was not then accepted and the money paid, she should regard the contract as at an end, and tender back the $500, and rescind the agreement. The plaintiff refused to accept the deed, persisting in his demand for the affidavits, and thereupon the defendant offered back the $500, and declared the contract at an end.

We think the plaintiff had no right to impose the condition of making the affidavits on the defendant and her agent, and that his doing so was equivalent on his part to denouncing the title as defective, and thereby giving to defendant the right of rescission as stipulated for in the agreement. But if this be not so, the plaintiff had, in our judgment, no right to impose such a condition, and, on refusal of defendant to comply with it, to resort to a court of equity to enforce the contract with the condition, or if he failed in the latter, to enforce specific performance of the contract itself. To allow purchasers of real estate to make such or similar conditions, and to speculate upon the chances of enforcing them by suit in equity, and all the while preserve the right to enforce specific performance of the agreement without the conditions, would not only open a new branch of equity jurisdiction, but operate to give an undue advantage to one party to such contracts, and render the rights of the other uncertain and subject to the caprice or necessities of the vendee.

We think the judgment should be affirmed, with costs.

DANIELS and BRADY, JJ., concurred.

Judgment affirmed.